IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY LIEBBE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| -v- | § | Civil Action No. 3:16-CV-02413-L |
| | § | ECF |
| | § | |
| CRAIG RICHARD MILLER, | § | |
| FLOYD MIKE MILES, AND | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendants. | § | |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, Jeremy Liebbe (hereinafter referred to as "Plaintiff Liebbe" or "Liebbe") and files his First Amended Complaint, complaining of Craig Richard Miller, Floyd Mike Miles and the Dallas Independent School District.  Mr. Liebbe respectfully shows the Court as follows:

### I.
### PARTIES

1.      Plaintiff Jeremy Liebbe is an individual who resides in Kaufman County, Texas.

2.      Defendant Craig Richard Miller (hereinafter sometimes referred to as "Defendant Miller" or "Miller") is an individual residing in Dallas County, Texas and is being sued in his individual capacity as the Chief of Police of the Dallas Independent School District. Defendant Miller may be served with process at his place of business 2500 South Ervay, Dallas, Texas 75215.

---

3.      Defendant Floyd Mike Miles (hereinafter sometimes referred to as "Defendant Miles" or "Miles") is an individual residing in the state of Colorado and is being sued in his individual capacity as the former superintendent of schools for the Dallas Independent School District. Defendant Miles may be served at 2575 Heathrow Dr., Colorado Springs, Colorado 80920.

4.      Defendant Dallas Independent School District is a school district organized under the laws of the State of Texas and may be served with process by serving its superintendent Michael Hinojosa at 3700 Ross Avenue, Dallas, Texas 75204.

## II.
## JURISDICTION AND VENUE

5.      Personal jurisdiction is appropriate because at all times relevant to Mr. Liebbe's claims, Defendant was a public school district located in the State of Texas in Dallas County, Texas. Further, an exercise of jurisdiction will not offend traditional notions of fair play and substantial justice.

6.      Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1331 because this case asserts claims for violation of 42 U.S.C. § 1983, a federal law that provides for federal question jurisdiction.

7.      Venue is appropriate in the Northern District of Texas because the acts giving rise to this suit occurred in Dallas County, Texas.

## III.
## FACTS

8.      Jeremy Liebbe was employed by the Dallas Independent School District ("Dallas ISD" or "District") continuously from July 26, 2004, through September 5, 2014. Liebbe served the District in investigative roles with progressive responsibility as a Police Officer, Forensics

Officer, Detective Sergeant of Police, and Manager of the Professional Standards Office. Liebbe holds a Bachelor of Arts in Police Science, a Master of Science in Forensic Psychology, a Master Peace Officer license from the State of Texas, and is pursuing a Doctor of Philosophy in Forensic Psychology. As a peace officer, Liebbe earned numerous commendations, prolifically lectured in Texas and several states, has authored and co-authored over a half dozen published papers, and has provided expert testimony in over a dozen felony trials.

9.      As the Manager of the Professional Standards Office ("PSO"), Liebbe directed the activities of the internal/public integrity investigations unit and the employee advocacy unit for the entire District, supervising four investigators (Thomesa Broadnax, Razieh Dobbs, Joseph Papa, and Antoinette Saade), two employee advocates (Maria Alva and Romeal Johnson), and an administrative specialist (Jennifer Morin). The PSO handled investigations into employee misconduct, with areas of responsibility including academic testing violations, Americans with Disabilities Act violations, Board policy violations, Equal Employment Opportunity (EEO) complaints, employee arrests and criminal history alerts, ethical violations, negligent supervision, non-financial fraud, retaliation, University Interscholastic League (UIL) violations, and suspected child abuse complaints.

10.      On July 15, 2014, Liebbe was informed by Chrystal Thierry (the Director of Compensation in Human Capital Management for Dallas ISD) that Tonya Sadler-Grayson (an Executive Director in Human Capital Management for Dallas ISD) had failed to disclose her criminal history on her job application with the District. Thierry forwarded Liebbe three text messages that she had received from Gaynel Jackson (the Lead Person for Fingerprinting and Backgrounds in Human Capital Management for Dallas ISD) describing events Jackson had recently discovered in Grayson's criminal history. In a brief inquiry, Liebbe discovered that

Grayson did have a criminal history including at least one conviction, that she lied on her job application to the District, that Carmen Darville (the Chief of Human Capital Management for Dallas ISD) had already attempted to cover Grayson's deception, and that there were additionally several hundred current employees with the District that Human Capital Management had not properly verified their criminal histories and/or were not properly tracking for new arrests or convictions in accordance with state law. On the evening of July 16, 2014, at approximately 7:45 p.m., Liebbe contacted Freddie Jackson (a retired police officer who works part-time as the driver for Superintendent Mike Miles) by telephone to notify Superintendent Miles of what Liebbe discovered and let Miles know that he was willing to meet with him at any time or location requested to fully describe what he had discovered and his recommendations for mitigating the problems.

11.     On July 17, 2014, at approximately 11:00 a.m., Liebbe's District laptop notified him that his network and account access had been disabled. A few minutes later, Tonya Sadler-Grayson told Liebbe that he was needed in Carmen Darville's office located at 3807 Ross Avenue, Dallas, Dallas County, Texas. Liebbe walked into the office to find Carmen Darville and Craig R. Miller (the Chief of Police for Dallas ISD) were already in the room. Darville informed Liebbe that he was being placed on administrative leave immediately and refused to tell him what, if any, allegations had been made against him. Darville then told Liebbe that Chief Miller would escort him to his office to collect a few of his personal belongings and then escort him off of District property. It should be noted that Liebbe was not armed, that he did not have any history of violence or threats of violence, and that Chief Miller was in full police uniform with a visible firearm and visible less-lethal weapons. Chief Miller told Liebbe that there were a few other people there before they exited Darville's office. Jason Rodriguez (a

Lieutenant of Police for Dallas ISD) was outside Darville's office wearing a suit and joined them as they walked to the building's lobby. Rodriguez was apparently armed as his concealed firearm was imprinting against the side of his suit jacket. Upon reaching the exit to the building, Liebbe immediately saw that there was a marked police vehicle occupied by a uniformed police officer parked in the fire lane in front of the building and a second marked police vehicle occupied by another uniformed police officer parked in the fire lane in front of his office building located directly across the street at 3709 Ross Avenue, Dallas, Dallas County, Texas. Liebbe turned to Chief Miller and asked, "*Are you kidding me?*" Chief Miller replied only that Rodriguez would take it from there and remained at the 3807 Ross Avenue building. Rodriguez and Liebbe walked across to the building where Liebbe's office was located. Upon entering the building, Liebbe saw a third uniformed police officer standing in the hallway outside of his office. Liebbe was instructed to leave his District laptop on his desk (which Liebbe secured to the locking docking station that was attached to his desk via a security cable, the key was in his desk and his desk was then locked), was allowed to collect a few personal belongings, and was then escorted out of the building and to his car by the police department personnel. (This was also when Liebbe turned over his DISDPD police radio, police ID, and badge as they were locked in his desk) Within a few hours, news agencies were running stories that Liebbe had been placed on administrative leave and had been escorted out by the police.

12.     Liebbe served nearly ten years with the Dallas ISD Police Department, with the vast majority of that time holding the rank of Detective Sergeant of Police, before accepting the new position over the District's Professional Standards Office, with over seven and a half years of that time holding a supervisory rank. Liebbe wrote, obtained, and supervised the execution of almost every search warrant ever obtained by the Dallas ISD Police Department and supervised

the execution of the vast majority of high risk arrest warrants ever obtained by the Dallas ISD Police Department. Liebbe wrote the policies and procedures for and taught the vast majority of continuing education training for crisis intervention and de-escalation techniques used within the police department and also utilized by other divisions of the school district (Psychological & Social Services, Counseling Services, Special Education, and Youth & Family Clinics). In all of Liebbe's combined experience with the school district, he had never seen police personnel dispatched for a single employee being placed on administrative leave or being terminated without prior threat or action of violence and had never seen such an incident involve more than two police officers, let alone a Lieutenant or Chief. Even in historical situations where multiple people were being placed on leave or terminated at once, Liebbe is unaware of any instance where there was more than a single uniformed police officer and a single marked police vehicle. Liebbe is also SWAT certified and is a prolific trainer in appropriate use of force, civil rights, and legal updates. Based on Liebbe's training and experience, it is his opinion that any person – regardless of training or experience – in that situation would not feel freedom of movement and would, under definition of the law, be detained and thus seized for purposes of the 4th Amendment, especially where there was no history of violence and there was neither probable cause, reasonable suspicion, or even mere suspicion that a criminal offense had occurred or was likely to occur.

13.     Liebbe truly believes that the excessive show of police presence on July 17th was intentionally designed to harass him, embarrass him, and cause him to feel intimidated. It worked. Liebbe did his best to pretend that he was not fazed, yet he must readily admit that he felt an autonomic nervous system response that resulted in a marked increase in adrenaline, cardiac output, and anxiety beginning the moment he saw the marked police vehicles in the

parking lots. Liebbe had noticeable difficulty in making eye contact with any of his co-workers who appeared to be both shocked and confused by what they saw. Shortly after getting into his car and leaving, Liebbe called a close friend of his, who is a Major of Police with the City of Dallas, trying to make sense of what had just happened. Liebbe went to meet her for lunch, but on entering the restaurant – a favorite location of theirs to meet for lunch – the smell of food nauseated Liebbe enough that he could not even think about eating.

14.     Liebbe later learned from a source, known to him to be both credible and reliable, who does not wish to be identified at the time that Asst. Chief Bill Avera had ordered the technology department to suspend Liebbe's network and account access prior to his being placed on administrative leave. This is outside the normal practice of the District as network and account access is typically suspended automatically when the Human Capital Management database is updated to show an employee is on leave (whether administrative, medical, military, or other).

15.     On the afternoon of July 17, 2014, all of Liebbe's employees in the Professional Standards Office were called to a meeting with Carmen Darville and Chief Miller. The employees were reportedly told that Liebbe had been placed on administrative leave, that they would report to the police department in the interim, and that if any of them had communication with Liebbe for any reason, their employment with the District would be subject to discipline, up to and including termination. Joseph Papa and Antoinette Saade, both of whom worked for Liebbe as investigators, separately contacted him that same day to inform him of what they had been told during the meeting.

16.     Antoinette Saade and Joseph Papa later contacted Liebbe separately to inform him that they had been questioned by supervisors (Lieutenant Jason Rodriguez and Detective

Sergeant Walter Green) from the Dallas ISD Police Department on or about July 21, 2014, regarding what keys they had and whether or not they had keys to a safe. Saade reportedly told Lieutenant Rodriguez and Detective Sergeant Green that she had previously had a key to Liebbe's personal safe stored in his office, but that she no longer had said key. Rodriguez and Green reportedly kept asking Saade if she had a key to Liebbe's safe. The safe in question was a small Sentry brand fire and water proof safe model H0100CG bearing serial number BY-021799 and that Liebbe purchased using personal funds from Wal-Mart for $50.00 plus sales tax. The safe had first been stored in Liebbe's office at the police department and was later stored in the locked closet within his office at the Professional Standards Office. Liebbe stored, among other items, a personally-owned external USB hard drive in the safe that he used to back up his working files from his work computer at the District. In case of Liebbe's demise, Liebbe also had stored in the safe a sealed envelope that contained a single typed sheet of paper listing any administrative-level passwords he had to District-owned computers and computer equipment. The sealed envelope was clearly marked "*CONFIDENTIAL*" with Liebbe's signature and the date the envelope was sealed hand-written across the envelope's seal. Saade and Papa were aware of the existence of said envelope in case of Liebbe's unexpected or accidental death so as to ensure continuity of the unit's operations. (Jennifer Morin, Liebbe's administrative specialist, had keys to all of the PSO offices including Liebbe's. Saade and Papa each had a high-security key that would unlock both their evidence room and the closet in Liebbe's office. Saade had a key to the safe while Liebbe was on vacation in Grand Cayman but returned the key to him when he got back to work.) Had anybody from the District contacted Liebbe to get access to District-owned computers and computer equipment, he would have

complied and provided access in accordance with both policy and logical reason – yet he was never contacted with any such request.

17.    On July 21, 2014, at approximately 11:00 p.m., Matthew Haag and Tawnell Hobbs with the Dallas Morning News published a news article titled "Dallas ISD investigator's desk safe seized as part of review." In that article, Haag and Hobbs wrote that "*DISD police brought in a locksmith to try to open the small desk safe that Jeremy Liebbe had in his district office, according to two people familiar with the incident.*" They further wrote that "*It is also unclear who in Dallas ISD is leading the investigation into Liebbe. DISD police area assisting but not leading it, according to one of the people familiar with the investigation. The district's other investigative unit, Internal Audit Investigations, is likewise not involved.*" Liebbe did not have any contact with Matthew Haag, Tawnell Hobbs, or anybody else associated with the Dallas Morning News regarding what Saade and Papa told him earlier that day. (Tawnell Hobbs has an extensive network of sources within DISD). Antoinette Saade has confirmed to Liebbe that, as of October 20, 2014, she has never spoken with anybody she knows to be employed by or affiliated with the Dallas Morning News. Joseph Papa has also as confirmed to Liebbe that, as of October 20, 2014, he has never spoken with anybody he knows to be employed by or affiliated with the Dallas Morning News.

18.    On August 14, 2014, Liebbe engaged in protected free speech and protected assembly by attending a public meeting of the Dallas ISD Board of Trustees at the District's headquarters. Liebbe checked in with the security desk and received a visitor badge prior to attending the public meeting. Subsequent to Liebbe's attendance at the public meeting Jack Elrod, general counsel for the District, sent Liebbe a letter via counsel threatening employment disciplinary action up to and including termination if Liebbe attempted to attend another public

meeting of the Dallas ISD Board of Trustees. On August 26, 2014, Liebbe engaged in protected free speech by filing a written complaint with the Texas Education Agency (TEA) reporting the numerous potential violations of the Texas Education Code, Texas Penal Code, Texas Administrative Code, and Dallas ISD Board Policy that he had discovered on or about July 15th, including but not limited to the violations Liebbe attempted to report to Superintendent Miles on July 16th. The complaint was written on Liebbe's personal letterhead and transmitted from Liebbe's personal computer at his residence to the TEA from Liebbe's personal facsimile number and personal email account. On September 3, 2014, Liebbe filed a written complaint with the Dallas ISD's Board of Trustees reporting numerous violations of state law and Board policy, and attached a copy of the report he had filed with the Texas Education Agency. The complaint was likewise written on Liebbe's personal letterhead and transmitted from Liebbe's personal computer at his residence to the Trustees from Liebbe's personal email account. On September 5, 2014, Liebbe was summoned to the District's human resources offices via a telephone call from Darville's executive administrative assistant at approximately 4:15 PM. The District's central office hours are from 7:30 AM to 4:30 PM on weekdays. Liebbe contacted his attorneys and called Darville's executive administrative assistant back to advise that neither of his attorneys were available that late on a Friday, that it would take at least an hour for him to drive in from his residence in another county, and asked if the meeting could be rescheduled for Monday morning. Liebbe was told that Darville needed to meet with him that day and that Darville would wait for him to arrive. Liebbe arrived at Darville's office at approximately 6:00 PM where he found one of the District's media relations coordinators and one of the District's police sergeants waiting in the lobby. Liebbe was escorted by the police sergeant to Darville's office where he was was met by Darville and Jack Elrod (attorney and General Counsel for

Dallas ISD). Liebbe, on noticing the presence of the District's counsel, advised that if the meeting was to include business where Liebbe was entitled to the presence of his counsel he invoked his right to counsel and asked that the meeting be rescheduled for the following Monday morning. Liebbe's request was ignored and he was informed in writing that his employment with the District was being terminated immediately for "*substantiated allegations that [Liebbe] acted outside the scope of [his] role of Manager of the Professional Standards Office.*" The Dallas Independent School District simultaneously released a statement on its website stating: "*Dallas ISD announced that it has released its lead investigator based on the findings of a month and a half long review. The review, conducted by outside counsel, found multiple instances of poor behavior and decision- making, and violations of law and the Texas Education Code that warranted the termination of Jeremy Liebbe, who had managed the Professional Standards Office since March 2014.*"

19.     Subsequent to being notified of his termination, Liebbe asked if he could collect some of his personal belongings that were still in his office. Darville notified Liebbe that she did not have keys to his office and asked Sergeant Russell Rojas (Dallas ISD Police Department) if he had brought the keys from Chief Craig Miller. Sergeant Rojas, Tony Munoz (an Executive Director in Human Capital Management for Dallas ISD who had to resign when Darville resigned due to the instant messaging scandal), and Freddy (Liebbe never knew his last name, but he had been there for years and is a very personable and likeable guy) (the lead custodian for the Human Capital Management offices at Dallas ISD) escorted Liebbe to his office located at 3709 Ross Avenue in Portable #3. Freddy told Liebbe that he had been not been allowed to enter his office to clean since he had been placed on administrative leave. Liebbe was allowed to collect what Munoz believed was obviously personal property but was

told that he could not take any papers, binders, notebooks, or other documents – including his Notary Public record books and personal medical records related to an on the job injury for which Liebbe was still recovering and records that were on loan directly to him, and not the District, from the Dallas Police Department's Homicide Division. Liebbe took twenty-two (22) digital photographs documenting the papers, binders, notebooks, and other items that he did not take with him and that he was not allowed to take with him that day.

20.    Liebbe made several attempts to contact Carmen Darville by telephone, leaving phone messages each time, to arrange to pick up the remainder of his personal property, documents, and other effects. On September 19, 2014, when Liebbe went to file the appeal regarding his termination, he asked in person about his personal property, documents, and other effects. Liebbe was provided with a box containing a few of the personal property items that were in his file cabinet outside of his office and was told by Mary Gomez (a Specialist with Employee Relations for Dallas ISD) that she had been instructed to box up all of the documents in his file cabinet to be destroyed by shredding. A few hours later, Liebbe's attorney sent an email to the school district's attorney asking

"*Please tell DISD not to shred or otherwise destroy these documents and papers. Please let us know a time that it would be appropriate for Jeremy to retrieve these documents and papers.*"

On September 23, 2014, Liebbe was contacted by Patrice James (a Manager with Employee Relations for Dallas ISD) to schedule a time for him to come collect the remainder of his personal items.

21.    On September 24, 2014, Liebbe went to collect the remainder of his personal property, documents, and other effects from his office. Patrice James, Sergeant Jeff Rouse

(Dallas ISD Police), and Freddy (lead custodian) were present. Liebbe's file cabinet that was located outside of his office was missing entirely. Patrice James advised that the police department had taken Liebbe's file cabinet and had also been inside his office several times in the past two weeks and had taken a number of items with them. Liebbe took twenty (20) digital photographs documenting how the room appeared upon the door being unlocked for him to enter his office. Almost all of the papers, binders, notebooks, and other documents were missing from his office and his desk drawers.

22.     On September 25, 2014, Liebbe's attorney sent correspondence to the attorney representing the District with the following request. Neither Liebbe's attorney nor Liebbe received any response to the request.

> *"Please tell DISD to provide to us the following information by close of business Monday:*
> *1.  A complete and detailed inventory of items, documents, and papers removed from Jeremy's office after September 5th (including items, documents, and papers that DISD believes to be property of the District);*
> *2.  The reason for the search and seizure of said items after the termination of Jeremy's employment with DISD;*
> *3. The reason that the search and seizure was conducted by the police department; and*
> *4. Which District official(s) ordered the search and seizure of said items."*

23.     On September 26, 2014, Liebbe's attorney filed a public information request for *"any reports generated by the Dallas ISD Police Department from July 1, 2014, through September 26, 2014, involving Carmen Darville, Tonya Sadler-Grayson, Crystal Thierry, and/or Jeremy Liebbe."* The substantive response from the District was received on  October 9, 2014, and included a single report dated July 23rd describing an altercation  involving Tonya Sadler-Grayson and Crystal Thierry. The substantive response did not  include any reports from the police department related to Liebbe's being escorted out of the  building on July 17th, any

reports from the police department related to the seizure and/or search of Liebbe's personal safe from his office on or about July 21st, or the search and/or seizure of documents and papers from his office between September 5th and September 24th.

24.   Antoinette Saade has told Liebbe that she has personally observed Asst. Chief Hodges and Asst. Chief Avera going in and out of Liebbe's office during the time period between July 17th and September 24th. Saade has also told Liebbe that she was questioned by police personnel (Lieutenant Jason Rodriguez and Detective Sergeant Walter Green) as to whether or not she had a key to Liebbe's personally owned safe and further saw Asst. Chief Avera remove from his office what appeared to be his personally owned safe on or about 21st.

25.   Liebbe has reason to believe and does believe that, on or about several dates including July 17th, July 21st, and unknown date(s) between September 5th and 24th, 2014, and while located in the City of Dallas, Dallas County, Texas: Chief Craig Richard Miller, Asst. Chief Isaac William Avera, Asst. Chief Gary Wayne Hodges, and/or other peace officers under the command of Chief Miller intentionally subjected Liebbe to mistreatment, detention, search, seizure, and dispossession that Miller knew – or should have reasonably known given their licensure, training, education, and experience – to be unlawful. The culpable mental state of Miller, et al., is further evidenced by the frequency of targeted incidents and lack of any police reports for said events and the lack of any response to Liebbe's attorney's request regarding justification of the seizure and an inventory of items taken.

### IV.
### WRONGFUL SEIZURE AND DETENTION AND WRONGFUL SEARCH AND SEIZURE AGAINST DEFENDANT MILLER

26.   Plaintiff re-alleges and incorporates allegations contained in the paragraphs above as if stated fully herein.

27.     Defendant Miller, who was at all times acting in his individual and official capacity as Chief of Police for the Dallas Independent School District and acting under color of state law, deprived the Plaintiff of rights secured to him by the Constitution and laws of the United States. The actions of Defendant Miller were taken with deliberate indifference to the rights of Plaintiff secured by the Constitution and the laws of the United States.

28.     The actions of Defendant Miller described in the paragraphs above constituted a false and wrongful seizure and/or detention without probable cause in clear violation of Plaintiff's rights under the 4th and 14th Amendments to the United States Constitution. Defendant Miller participated in or ordered, directed and approved the actions of subordinates under his command, to unconstitutionally seize and/or detain Plaintiff without probable cause, without a warrant and when there was no reasonable suspicion to believe that Plaintiff was engaged in any criminal activity. Plaintiff seeks punitive damages against Defendant Miller because he knew that he lacked probable cause, a warrant and any other justification to seize and/or detain Plaintiff, acted with conscious indifference to and with reckless and callous indifference to Plaintiff's federally protected rights, acted with deliberate indifference to the likelihood that the seizure and/or detention of Plaintiff would violate Plaintiff's constitutional rights without a warrant or reasonable suspicion and/or recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct.

29.     The actions of Defendant Miller as set forth in the paragraphs above constitutes unlawful search and seizure of Plaintiff's personal papers and effects in clear violation of Plaintiff's rights under the 4th and 14th Amendments to the United States Constitution. Defendant Miller participated in or ordered, directed and approved the actions of subordinates under his command, to unconstitutionally seize and search Plaintiff's personal papers and effects

without a warrant and when there was no reasonable suspicion to believe that Plaintiff was engaged in any criminal activity. Plaintiff seeks punitive damages against Defendant Miller because he knew that he lacked a warrant and probable cause to seize and search Plaintiff's personal papers and effects, acted with conscious indifference to and with reckless and callous indifference to Plaintiff's federally protected rights, acted with deliberate indifference to the likelihood that the seizure and search of Plaintiff's personal papers and effects would violate Plaintiff's constitutional rights by seizing and searching his papers and effects without a warrant or reasonable suspicion and/or recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct.

## V.
### WRONGFUL SEIZURE AND DETENTION AND
### WRONGFUL SEARCH AND SEIZURE AGAINST DEFENDANT MILES

30.    Plaintiff re-alleges and incorporates allegations contained in the paragraphs above as if stated fully herein

31.    At all times material, Defendant Miles, acting in his individual and official capacity as superintendent of the Dallas Independent School District, acted with deliberate indifference to the rights secured to Plaintiff by the constitution and laws of the United States, actively participated and actually supervised the wrongful seizure and/or detention of Plaintiff and the unlawful seizure and search of Plaintiff's personal papers and effects, or alternatively ordered, directed and approved the actions of Defendant Miller and his subordinates thereby violating the rights secured to Plaintiff under 4th and 14th Amendment to the United States Constitution.

32.    Plaintiff filed a formal grievance with Defendant Miles concerning the deprivation of Plaintiff's right to be free from unlawful seizure and/or detention and free from

unreasonable and unlawful searches and seizures guaranteed under the 4th and 14th Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983. Upon information and belief, Defendant Superintendent Miles took no action concerning Plaintiff's complaints against Defendant Miller. Defendant Miles had a policy, procedure, custom, practice or protocol which authorizes, requires or allows its Chief of Police to unlawfully seize and detain employees and unlawfully seize and search their personal papers and effects under color of law. Plaintiff avers that Defendant Miles, as superintendent has ratified Defendant Miller's deprivations of Plaintiff's civil rights under color of law. Alternatively, Plaintiff avers that Defendant Miles, as superintendent was deliberately indifferent to the known, obvious and highly predictable consequences of the deprivation of Plaintiff's civil rights by Defendant Miller.

## VI.
## WRONGFUL SEIZURE AND DETENTION AND
## WRONGFUL SEARCH AND SEIZURE AGAINST DEFENDANT DALLAS
## INDEPENDENT SCHOOL DISTRICT

33.     Plaintiff re-alleges and incorporates allegations contained in the paragraphs above as if stated fully herein.

34.     Plaintiff filed a formal grievance with Defendant Dallas Independent School District concerning the deprivation of Plaintiff's right to be free from unlawful seizure and/or detention and free from unreasonable and unlawful searches and seizures guaranteed under the 4th and 14th Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983. Upon information and belief, Defendant Dallas Independent School District took no action concerning Plaintiff's complaints against Defendants Miller and Miles. Defendant Dallas Independent School District has a policy, procedure, custom, practice or protocol which authorizes, requires or allows its Chief of Police and/or superintendent to unlawfully seize and detain employees and unlawfully seize and search their personal papers and effects under color

of law. Plaintiff avers that Defendant Dallas Independent School District has ratified Defendant Miller's and Defendant Mile's deprivations of Plaintiff's civil rights under color of law. Alternatively, Plaintiff avers that Defendant Dallas Independent School District was deliberately indifferent to the known, obvious and highly predictable consequences of the deprivation of Plaintiff's civil rights by Defendant Miller.

35.     Plaintiff was discharged from his employment with Dallas Independent School District in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities. The stigmatizing charges that were made against Plaintiff in connection with the discharge were false and he was not provided notice or an opportunity to be heard prior to his discharge. The charges were made public. Plaintiff filed a formal grievance with the Dallas Independent School District seeking to clear his name and restore the damage done to his reputation. Defendant Dallas Independent School District did not conduct a name clearing hearing that cleared Plaintiff's name and reputation. The charges made against Plaintiff rise to such a level that it creates a badge of infamy, which has destroyed Plaintiff's ability to take advantage of other employment opportunities. The claims and charges against Plaintiff were and are false and have resulted in damage to Plaintiff's reputation and employment opportunities.

36.     Plaintiff was discharged from his employment with Dallas ISD in retaliation for his engagement in protected speech and assembly by attending the public meeting of the Dallas ISD Board of Trustees and by filing a complaint with the Texas Education Agency.

## VII.
## FIRST AMENDMENT RETALIATION AGAINST DEFENDANTS

37.     Plaintiff re-alleges and incorporates allegations contained in the paragraphs above as if stated fully herein.

38.     Plaintiff engaged in protected speech as a citizen concerning a matter of public concern when he engaged in protected speech as described above.

39.     Defendants were motivated by Plaintiff's speech when terminating him.

40.     Defendants are liable under 42 U.S.C. § 1983 because it officially adopted and promulgated the decision to terminate Mr. Liebbe for engaging in protected speech.   The Department is also liable because the decision to terminate Mr. Mendoza was made by officials to whom the Agency had delegated policy-making authority.

41.     Defendants violated the United States Constitution when it terminated Plaintiff for engaging in protected speech.

42.     Plaintiff's First Amendment interests, combined with the interests of the public, outweigh Defendants' legitimate interests in the efficient performance of the work place.

43.     Defendant Miles, who was at all times acting in his individual and official capacity as Superintendent of Schools for the Dallas Independent School District and acting under color of state law, and Defendant Dallas ISD, via actions and/or omissions of general counsel Jack Elrod, deprived the Plaintiff of rights secured to him by the Constitution and laws of the United States. The actions of Defendant Miller were taken with deliberate indifference to the rights of Plaintiff secured by the Constitution and the laws of the United States.

## VIII.
## DAMAGES

44.     As a direct and proximate cause of Defendants' conduct, Plaintiff has suffered injuries and damages. Plaintiff's injuries and damages include actual damages for loss of earning and earning capacity, emotional distress damages in the past and future, mental distress damages in the past and future, presumed damages, punitive damages and nominal damages.

## XI.
## ATTORNEY'S FEES

45.     Upon prevailing in this matter, Plaintiff is entitled to an award of attorney's fees and costs under 42 U.S.C. §1988.

## X.
## PRAYER

46.     For all of the foregoing reasons, Plaintiff requests that citation be issued, that Defendants be served, and that upon final trial, Plaintiff have judgment against Defendants for actual damages, emotional distress damages, mental distress damages, punitive damages, presumed damages, nominal damages, reasonable attorney's fees, cost of suit and all other relief to which Plaintiff may show himself entitled, both at law and in equity.

Respectfully submitted,

*/s/ Allison C. Reppond*
Robert J. Wiley
Texas Bar No. 24013750
*Board Certified – Labor and Employment Law – Texas Board of Legal Specialization*
Allison C. Reppond
Texas Bar No. 24085733
LAW OFFICE OF ROB WILEY, P.C.
2613 Thomas Avenue
Dallas, Texas 75204
Telephone:  (214) 528-6500
Facsimile:  (214) 528-6511
areppond@robwiley.com

ATTORNEYS FOR PLAINTIFF
JEREMY LIEBBE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 6, 2016, a true and correct copy of the foregoing document has been served on the following counsel for Defendants Craig Richard Miller, Floyd Mike Miles, and Dallas Independent School District via the Court's electronic filing system.

Carlos G. Lopez
Kathryn E. Long
Malerie T. Anderson
Thompson & Horton LLP
500 North Akard Street, Suite 2550
Dallas, Texas 75201

*/s/ Allison C. Reppond*
Allison C. Reppond
