# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEREMY LIEBBE | § § § | |
| v. | § § | CASE NO. 3:16-CV-2413-S |
| DALLAS INDEPENDENT SCHOOL DISTRICT | § § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant Dallas Independent School District's ("Dallas ISD") Motion for Summary Judgment [ECF No. 62]. For the reasons stated below, the Court grants the Motion.

### I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sam A. Lindsay to the docket of this Court on March 8, 2018.

This civil rights case arises out of Plaintiff Jeremy Liebbe's ("Liebbe") allegation that Defendant Dallas ISD terminated him for engaging in protected speech as a citizen on a matter of public concern. Dallas ISD continuously employed Liebbe for approximately ten years, from 2004 to 2014. Third Am. Compl. ("Compl.") ¶ 6. Liebbe served in various investigative roles during this time. *Id.* ¶ 7. Ultimately, Liebbe became the Manager of the Professional Standards Office ("PSO"). *Id.* ¶ 10. In this position, he directed the activities of the internal/public integrity investigations and employee advocacy units. *Id.* PSO is a part of Dallas ISD's Human Capital Management ("HCM") department and serves a human resources-focused investigative function. Def.'s App. 3-4. Liebbe reported directly to Tonya Sadler Grayson ("Grayson"), an Executive

Director of HCM, and Grayson reported to Carmen Darville ("Darville"), Dallas ISD's Chief of HCM. Pl.'s App. 48-49.

In the summer of 2014, Grayson learned that Liebbe allegedly engaged in misconduct at PSO by taking unauthorized actions on the job. Such misconduct included Liebbe issuing a directive allowing PSO staff to work over the school district's summer break. *See* Def.'s App. 118, 137, 148-50, 663-64, 754. In addition, Grayson became aware that Liebbe disabled the Dallas ISD Information Technology ("IT") Department's access to PSO computer servers without the IT Department's knowledge or Dallas ISD's authorization. *Id.* at 753-54. Grayson also learned that Liebbe installed surveillance cameras around the PSO facility without authorization. *Id.* at 754.

Around July 7, 2014, after Dallas ISD staff returned from summer break, Grayson reported Liebbe's misconduct to Darville, her direct supervisor, and sought advice from other personnel regarding Liebbe's actions. *Id.* at 755-56. On July 9, 2014, Grayson suggested to Dallas ISD's outside counsel that Dallas ISD may not retain Liebbe. *Id.* at 755. The same day, Grayson announced a reorganization of HCM that included a change to the job description for the PSO manager. *Id.* at 137-38, 151-52, 755.

On July 15, 2014, shortly after Grayson announced the reorganization of HCM, Liebbe asked another HCM employee to look up Grayson's criminal background and learned she had been convicted of a misdemeanor at age 19. Pl.'s App. 178-83; Def.'s App. 77-78. Liebbe also learned that Grayson did not disclose this conviction on her Dallas ISD job application. *See* Pl.'s App. 174. Liebbe then contacted Superintendent Mike Miles's ("Miles") driver, Freddie Jackson ("Jackson"), and said he needed to speak with Miles about Grayson's criminal background. *Id.* at 188-90.

The next day, July 17, 2014, Liebbe was notified that his Dallas ISD network and account access had been disabled. Compl. ¶ 18. Shortly after receiving this notification, Liebbe was called into a meeting with Darville. *Id.* ¶ 19. Craig R. Miller ("Miller"), Dallas ISD's Chief of Police, also attended the meeting. *Id.* ¶ 21. Darville informed Liebbe that he was being placed on administrative leave but did not tell him what allegations had been made against him. *Id.* ¶ 23. Liebbe was allowed to collect a few personal belongings before police department personnel escorted him out of the building. *Id.* ¶ 25. That same day, Liebbe's employees were called into a meeting with Darville and Miller. *Id.* ¶ 29. The employees were told that Liebbe had been placed on leave and that they would be subject to discipline if they had any contact with Liebbe. *Id.* ¶ 30.

Shortly after Liebbe's placement on administrative leave, Dallas ISD retained outside counsel Carlos Lopez ("Lopez") to conduct an investigation of Liebbe's reported misconduct. Def.'s App. 6. In early August 2014, Lopez interviewed Liebbe as part of the investigation, and Liebbe learned that the scope of the investigation included surveillance camera installation and his handling of the PSO server. *Id.* at 678. Around the same time, Liebbe realized that Dallas ISD was considering terminating his employment and discussed resigning from the district. *Id.* While Lopez's investigation of his conduct was ongoing, Liebbe attended an August 14, 2014, Briefing of the Dallas ISD Board of Trustees (the "Board"). Compl. ¶¶ 33-34. Afterward, Jack Elrod, Dallas ISD's General Counsel, sent Liebbe a letter threatening disciplinary action if he attended another public meeting of the Board. *Id.* ¶ 36.

Lopez's investigation of Liebbe's conduct was scheduled to conclude by August 22, 2014. Def.'s App. 120-21. That day, however, Dallas ISD learned that, under Liebbe's leadership, PSO recorded interviews with district students without obtaining written consent from their parents. *Id.* at 396. Lopez's investigation continued and broadened in scope to include PSO's handling of

student interviews. While the investigation proceeded, on August 26, 2014, Liebbe sent a letter to the Texas Education Agency ("TEA") regarding his personal complaints against Dallas ISD, Grayson's failure to disclose her criminal background, and Dallas ISD's performance of criminal background checks on its employees. *Id.* at 96-99. On September 3, 2014, Liebbe sent a letter to the Board that discussed the allegations of misconduct against him and his placement on administrative leave. *Id.* at 92-94. Liebbe's letter to the Board enclosed a copy of his complaint to the TEA. Compl. ¶ 40.

On September 5, 2014, Lopez completed his investigation and delivered a report to Miles. Def.'s App. 50-87. The report confirmed that Liebbe engaged in misconduct and violated Dallas ISD policy and Texas state law. *Id.* at 8-10. After reviewing the report and meeting with Lopez on September 5, 2014, Miles decided to terminate Liebbe's employment. *Id.* at 8. Miles believed that the policy violations and lapses in professional judgment substantiated in the report were egregious and that termination was the only appropriate course of action.

On September 5, 2014, Liebbe was summoned to Dallas ISD's HCM office. Compl. ¶ 49. Liebbe advised Darville's executive administrative assistant that neither of his lawyers were available that late on a Friday and that it would take at least an hour for him to drive in to the office. *Id.* ¶ 51. He asked if the meeting could be rescheduled for Monday morning. *Id.* The assistant informed him that Darville needed to meet with him on Friday and that Darville would wait for him to arrive. *Id.* ¶ 52. Liebbe arrived at Darville's office around 6:00 p.m. *Id.* ¶ 53. A police sergeant escorted him to Darville's office, where Elrod was also waiting. *Id.* ¶ 54. Liebbe noticed that Dallas ISD's counsel was present. *Id.* ¶ 55. He invoked his right to counsel and again asked that the meeting be rescheduled to Monday. *Id.* This request was not granted, and Liebbe received his termination letter, which informed him that he was being fired because he was the

subject of an investigation that substantiated allegations that he acted outside the scope of his role as Manager of PSO. *Id.* ¶ 56.

Liebbe appealed his termination to the Board. *Id.* ¶ 66. A hearing was held on or about November 13, 2016. *Id.* ¶ 67. A three-member subcommittee of the Board (the "Board Subcommittee") affirmed Liebbe's termination. *Id.* ¶ 68. Liebbe sued Dallas ISD for violation of his First Amendment right to free speech and alleges that he was terminated in retaliation for speaking out regarding Dallas ISD's handling of employees' criminal background checks.

## II. LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material

5

fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. ANALYSIS

In its Motion, Dallas ISD argues that Liebbe cannot establish a violation of his First Amendment rights because he did not engage in protected activity and because there is no evidence to show that any alleged protected activity was the reason for his termination. Dallas ISD further contends that Liebbe has failed to establish municipal liability under § 1983 because he cannot show that his termination was the result of an official policy or custom of Dallas ISD's Board of Trustees. Even if Liebbe could establish that Dallas ISD could be held liable under § 1983, Dallas ISD argues, there is no evidence to impute any alleged retaliatory motives of Miles to the Board. Instead, Dallas ISD argues that the uncontroverted evidence shows that Dallas ISD's Board Subcommittee voted to deny Liebbe's grievance based on the results of Lopez's investigation and not due to Liebbe's alleged protected speech.

#### A. *First Amendment Retaliation*

Because Liebbe only sued Dallas ISD, he must establish a basis for municipal liability pursuant to 42 U.S.C. § 1983. Section 1983 creates no substantive rights, but merely provides a damage remedy for the deprivation of existing federal constitutional or statutory rights. *See Wilson*

6

*v. Garcia*, 471 U.S. 261, 278 (1985). To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 525 (5th Cir. 1994). The existence of a constitutional violation is a "threshold" issue and may be determined before analyzing whether the entity may be held responsible for the violation. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying *constitutional* violation, there can be no § 1983 liability imposed on the school district[.]" *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th Cir. 1997).

To establish a First Amendment retaliation claim, a public employee must prove that: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (citations and internal quotation marks omitted). In its Motion, Dallas ISD challenges the second and fourth elements of Liebbe's claim.

### i. *Protected Speech*

Liebbe initially alleged that he engaged in First Amendment protected speech on four occasions: (1) his July 2014 conversation with Jackson about Grayson's criminal background; (2) his August 14, 2014, attendance at the Briefing of Dallas ISD's Board ("Board Briefing"); (3) his August 26, 2014, letter to the TEA ("TEA Letter"); and (4) his September 3, 2014 letter to Dallas ISD's Board ("Board Letter"). In his Response, Liebbe conceded that his conversation with Jackson and attendance at the Board Briefing are not protected speech. Pl.'s Br. 22 n.6. For summary judgment purposes, Dallas ISD "assumes that Liebbe has raised a fact issue that his TEA

7

[Letter] is constitutionally protected speech." Def.'s Reply 2. However, Dallas ISD argues that the Board Letter does not constitute protected speech. The Court agrees.

The First Amendment to the United States Constitution protects a public employee's right, under certain circumstances, to speak as a citizen on matters of public concern. *Davis v. McKinney*, 518 F.3d 304, 311 (5th Cir. 2008) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)). Upon entering government service, a "citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). At the same time, a "citizen who works for the government is nonetheless a citizen." *Id.* at 419. Thus, the First Amendment limits "the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id.* The law seeks to strike a balance between promoting "the individual and societal interests that are served when employees speak as citizens on matters of public concern" while, at the same time, preserving "the needs of government employers attempting to perform their important public functions." *Id.* at 420.

Government employees' statements made in the course of performing their job, even if made on a matter of public concern, are not protected by the First Amendment. *See id.* at 424. In determining whether speech was made as a private citizen or in the course of a public employee's professional duties, courts consider the employee's job description, whether the speech concerned the speaker's employment, whether the speech was made internally or to an external party or entity, and whether the speech stemmed from special knowledge gained by virtue of employment with a public entity. *See Elizondo v. Parks*, 431 F. App'x 299, 303 (5th Cir. 2011) (per curiam). Where "a public employee raises complaints or concerns up the chain of command at his workplace about his job duties" those complaints and concerns are made in accordance with one's job duties. *Davis*,

518 F.3d at 313. Additionally, the Fifth Circuit has held that "internal personnel disputes and management decisions are rarely a matter of public concern." *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 825-26 (5th Cir. 2007).

The Court finds that the Board Letter is not protected speech under the First Amendment. The letter discusses allegations regarding Liebbe's misconduct on the job, his placement on administrative leave, the way Dallas ISD police treated him when he was placed on leave, and Dallas ISD's response to Liebbe's attendance at the Board Briefing. Def.'s App. 92-94. The letter concludes with Liebbe asking the Board to "gain control of this treacherous situation before the administration forces [him] to seek justice through the courts." *Id.* at 94. Thus, the Board Letter conveys the complaints of a Dallas ISD employee regarding his personal employment situation and was sent by Liebbe as "an employee embroiled in a personal employment dispute," not as a private citizen on a matter of public concern. *Gillum v. City of Kerville*, 3 F.3d 117, 121 (5th Cir. 1993); *see also Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 674 (5th Cir. 2006) (statements "made to exonerate one's own professional reputation address a matter of personal concern" and are not protected by the First Amendment (quoting *Markos v. City of Atlanta*, 365 F.3d 567, 571 (5th Cir. 2004))).

The Board Letter also addresses alleged deficiencies in Dallas ISD's employee background check practices, including Grayson's alleged criminal background check. However, that portion of the letter relates to Liebbe's job duties, contains information he learned or had access to because of his job as Manager of PSO, and was sent internally up his chain of command. Liebbe admitted that he had access to Grayson's personnel information and the ability to check the criminal backgrounds of Grayson and other Dallas ISD employees because of his role as PSO Manager. He stated in the Board Letter that his investigation of Grayson "was within the scope of [his]

professional duties." Def.'s App. 92-93. Further, Dallas ISD policy provides that complaints that the Superintendent violated the law, such as Liebbe's, "may be made directly to the Board." *Id.* at 345. These undisputed facts demonstrate that the Board Letter was not speech made as a private citizen on a matter of public concern and, thus, is not protected by the First Amendment. *See Tucker v. Parish*, 582 F. App'x 363, 365-66 (5th Cir. 2014); *Elizondo*, 431 F. App'x at 302-03; *Davis*, 518 F.3d at 312-13, 315-17; *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692, 694 (5th Cir. 2007).

Liebbe argues that the Board Letter is at least "mixed speech." *See Stotter*, 508 F.3d at 826 ("[E]ven a mere scintilla of speech regarding a matter of public concern is sufficient to treat the entire communication as mixed speech."). However, "the content, form, and context" of the letter "revealed by the whole record" show that Liebbe was not speaking as a private citizen on a matter of public concern. *See Harris ex rel. Harris v. Pontotoc Cty. Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). While the letter was sent on Liebbe's personal letterhead, the letter was purely internal within Dallas ISD and was only emailed to Dallas ISD Board members. The letter was sent to the Board in the context of Liebbe's placement on administrative leave while he was the subject of an ongoing personnel investigation. The singular focus of the content of the letter was Liebbe's private interest—his employment with Dallas ISD and placement on administrative leave.

### ii. *Causation*

Even assuming the TEA Letter constitutes protected speech, summary judgment is proper because the record demonstrates that this speech did not cause Liebbe's termination. To survive summary judgment, a plaintiff must show that his protected speech was a motivating factor in his termination. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). If

the plaintiff makes this showing, the defendant may "avoid liability by showing that they would have taken the same adverse employment action even in the absence of the protected speech." *Haverda v. Hays Cty.*, 723 F.3d 586, 595 (5th Cir. 2013) (citing *Doyle*, 429 U.S. at 287). The employee "may still refute that showing by presenting evidence that his employer's explanation for the adverse employment action is merely pretextual." *Id.* (citing *Coughlin v. Lee*, 946 F.2d 1152, 1157 (5th Cir. 1991)).

Liebbe argues that causation has been established because Miles was aware of his protected speech, and the speech took place merely days prior to his termination. To establish Miles's awareness of his speech, Liebbe cites a September 5, 2014, email from a journalist which was forwarded to Miles and which referred to the Board Letter and the background check issues Liebbe had raised. Liebbe was terminated the day Miles was forwarded the journalist's email, two days after Liebbe sent his letter to the Board, and ten days after he sent the TEA Letter. In response, Dallas ISD argues that the evidence does not establish that Miles saw or read the journalist's email before making the termination decision. Moreover, Dallas ISD disputes that temporal proximity connects Liebbe's letters to his termination because Liebbe sent the letters to the TEA and the Board after Grayson, his direct supervisor, considered his termination and after Dallas ISD placed Liebbe on administrative leave pending an investigation of alleged misconduct. Further, Liebbe sent the letters after the investigator interviewed him and after he considered resigning because he knew termination was likely. Liebbe cannot improve his position by engaging in protected activity after Dallas ISD already moved toward terminating his employment. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) ("Employers need not suspend previously planned transfers upon discovering [protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality.").

### iii. *Pretext*

Even if the Court assumes that Liebbe can state a prima facie case with this evidence, Dallas ISD is entitled to summary judgment. Where a plaintiff presents sufficient evidence to make a prima facie showing that protected speech played a substantial part in the employment action, the employer's action is not unconstitutional if the employer would have taken the same action even in the absence of the employee's protected speech. *Gerhart v. Hayes*, 217 F.3d 320, 321-22 (5th Cir. 2000). Although "summary disposition of the causation issue in First Amendment retaliation claims is generally inappropriate," a plaintiff has the duty to present evidence that the employer's stated reasons for the employment action are pretextual. *Haverda*, 723 F.3d at 596; *see also Kostic v. Tex. A&M Univ. at Commerce*, 11 F. Supp. 3d 699, 731 (N.D. Tex. 2014) (noting that plaintiff "must show that a material issue of fact exists as to whether [defendant's] explanation is pretextual" (quoting *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 486-87 (5th Cir. 2008))). A jury question exists only "if a plaintiff brings forth evidence of pretext." *Haverda*, 723 F.3d at 595-96. Summary judgment is appropriate when the employer presents legitimate, non-retaliatory reasons for its employment action that the plaintiff does not controvert. *See id.* at 596; *Moore*, 578 F. App'x at 340-41 (affirming summary judgment where plaintiff offered no evidence to rebut legitimate reasons for suspending him without pay).

Dallas ISD presented uncontroverted evidence that Miles would have terminated Liebbe's employment separate and apart from any protected speech. An external investigation revealed that Liebbe engaged in employment misconduct, violated Dallas ISD policy by conducting student interviews without parental consent, and deleted the contents of his Dallas ISD laptop following placement on administrative leave. Liebbe does not challenge or offer any evidence to contradict

these findings and admits that he has no reason to think Miles doubted the findings of the investigation. Def.'s App. 691.

Liebbe does not refute Dallas ISD's evidence that his termination was based on the investigative findings with evidence that Dallas ISD's stated explanation is mere pretext for unlawful retaliation. Instead, Liebbe relies on the temporal proximity of his protected speech and his termination. Temporal proximity, standing alone, "is insufficient to establish an issue of fact as to pretext after an employer has provided a non-retaliatory reason." *Aryain*, 534 F.3d at 487; *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 605 (2001) ("Timing alone does not create an inference that the termination is retaliatory.").

Aside from timing, Liebbe argues that his termination letter was vague and that a reasonable jury could conclude that the letter's reference to Liebbe acting "outside the scope of [his] role of Manager of [PSO]" could refer to the letters to the TEA and the Board. Pl.'s Br. 27-29. The Court disagrees. The termination letter specifically states that "an investigation substantiated allegations that [he] acted outside the scope of [his] role as manager of the Professional Standards Office." Def.'s App. 133. Dallas ISD presented uncontroverted evidence that the investigation was unrelated to Liebbe's communications with the TEA or the Board. *See id.* at 52-53 (outlining scope of external investigation). Additionally, Liebbe argues that Dallas ISD gave inconsistent explanations of his termination to Liebbe and to the media because a Dallas ISD press release concerning the termination referenced "multiple instances of poor behavior and decision-making, and violations of law and the Texas Education Code." Pl.'s Br. 30-31. There is no evidence, however, that Dallas ISD's explanation for Liebbe's termination ever shifted. The termination letter and Dallas ISD's press release do not contradict one another, and both directly link the investigation of Liebbe's conduct with his termination. *See* Def.'s App. 133; Pl.'s App.

649. Thus, Liebbe failed to create a factual issue as to whether Dallas ISD's stated reasons for his termination are pretextual. Because Dallas ISD presented uncontroverted evidence that Miles would have terminated Liebbe based on the results of the investigation, regardless of Liebbe's letters to the TEA or the Board, the District is entitled to summary judgment on Liebbe's First Amendment retaliation claim.

### B. *Municipal Liability*

To prevail on a clam against Dallas ISD, Liebbe must establish not only the substantive elements of a First Amendment retaliation claim, as discussed above, but also a basis for municipal liability. Even if Liebbe had successfully established a First Amendment retaliation claim, he has not established a basis for municipal liability.

For a municipal entity to be liable under § 1983 for First Amendment retaliation, a plaintiff "must show that there was either an official policy or an unofficial custom, adopted by the [entity], that was the moving force behind the claimed constitutional violation." *Duvall v. Dall. Cty.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). The municipal entity cannot be held vicariously liable under §1983 for the individual acts of its employees. *See Monell*, 436 U.S. at 690. "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citations omitted). Therefore, to impose § 1983 liability on a municipality, a plaintiff must show that violation of his constitutional rights was the direct result of the execution of an "official" policy or custom, the custom or policy was approved or sanctioned by the entity's "final policymaker," and the final policymaker acted with "deliberate indifference," thus causing the plaintiff's injury. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Under Texas law, final policymaking authority in an independent school district rests with the

district's board of trustees unless such authority is delegated to an official. *See Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2013); *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). A school district board, as a body corporate, oversees district management. *See* TEX. EDUC. CODE ANN. §§ 11.151(a), 11.051(a)(1). A school district's board of trustees may act only by a majority vote of the members present at a meeting held in compliance with state law at which a quorum of the board is present and voting. *Id.* § 11.051(a-1).

"Unconstitutional actions of officials or employees of a municipality do not render the municipality liable under Section 1983 unless they execute official policy as contained in policy statements, ordinances, or regulations." *Gordon v. Greenville Indep. Sch. Dist.*, No. 3:13-CV-2914-N-BK, 2014 WL 1243978, at *6 (N.D. Tex. Mar. 26, 2014) (citing *Piotrowski*, 237 F.3d at 579). The plaintiff must specifically identify any policy that caused the alleged constitutional violation. *See Piotrowski*, 237 F.3d at 579-80. This requirement "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997) (citations omitted). Further, § 1983 liability may be based on "a persistent widespread practice" of the local government's officials or employees that is "so common and well settled as to constitute a custom that fairy represents [its] policy." *Jett v. Dall. Indep. Sch. Dist.*, 798 F.2d 748, 759 (5th Cir. 1986) (citing *Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985)).

To maintain his § 1983 claim against Dallas ISD, Liebbe must show that the Board, acting as a body corporate, adopted an unconstitutional policy or that it otherwise knew about or acquiesced in a persistent and widespread, or "deeply imbedded," unconstitutional practice, and that execution of this custom or policy deprived him of his First Amendment rights. *See Monell*,

15

436 U.S. at 690-91; *Piotrowski*, 237 F.3d at 578-79. Liebbe does not identify any policy of the Board that caused the alleged violation of his First Amendment rights. He also presents no evidence of any widespread unconstitutional custom or practice within Dallas ISD of depriving employees of their First Amendment rights. Liebbe does not allege that any other employees were deprived of any constitutional rights.

Liebbe argues that the requirements of municipal liability are met because the Board Subcommittee affirmed Miles's termination decision. Liebbe, however, does not present any evidence that the Board, as a body corporate, terminated Liebbe or had any role in the termination decision. Liebbe also presents no evidence that the Board delegated policymaking authority to the Board Subcommittee. According to Dallas ISD policy and Texas law, the decision of the three-member Board Subcommittee itself does not constitute a policy-setting action of the Board as a whole, nor an official policy or custom of Dallas ISD. *See* TEX. EDUC. CODE ANN. §§ 11.051, 11.151(b); Def.'s App. 290-92, 267.

Even assuming the actions of the Board Subcommittee were sufficient for municipal liability to attach, the Board Subcommittee did not make any decisions regarding Liebbe's termination or continued employment with Dallas ISD. Rather, the Board Subcommittee denied Liebbe's post-termination internal grievance, which sought damages and a name-clearing hearing, not reinstatement to his job as Manager of PSO. Further, even if the Board Subcommittee had made the termination decision, Liebbe does not identify any Board policy that the Board Subcommittee applied to violate his constitutional rights. *See Gordon*, 2014 WL 1243978, at *7 (holding that plaintiff must identify purported policy that violated his constitutional rights, show how that policy is attributable to board of trustees, and establish that he incurred damages because

of application of specific policy). Accordingly, Liebbe fails to raise a genuine issue of material fact to establish municipal liability against Dallas ISD.

Even if Liebbe could establish municipal liability, Liebbe does not present any evidence that his letters to the TEA and the Board caused the Board Subcommittee's decision to deny his grievance. There is no evidence in the record that the Board Subcommittee acted with a retaliatory motive against Liebbe. Liebbe presents no evidence that the Board Subcommittee members voted to deny his grievance because of his August 26, 2014, TEA letter or September 3, 2014, letter to the Board. Liebbe also argues, but introduces no supporting evidence, that Miles's purported retaliatory motives against Liebbe should be imputed to the Board Subcommittee. Even if Liebbe raised a material issue of fact that Miles acted with retaliatory motive, that motive cannot be imputed to the Board Subcommittee unless there is evidence that the Subcommittee was aware of Miles's alleged improper motive and approved of the retaliatory motive underlying the termination decision. *See Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 317-19 (5th Cir. 2011); *Saenz v. City of McAllen*, 396 F. App'x 173, 179 (5th Cir. 2010); *Gordon*, 2014 WL 1243978, at *8 (citing *Beattie*, 254 F.3d at 603) (dismissing municipal liability claim where plaintiff failed to allege "facts to establish that the Board approved the decision to terminate him *and* that it did so with the bad motives he posits").

Liebbe, however, presents no evidence that the Board Subcommittee was aware that Miles terminated Liebbe because of his letters to the TEA and/or the Board. Liebbe's assertion to the Board Subcommittee during his grievance that he believed Miles terminated his employment in retaliation for this protected speech is not competent evidence that the Board Subcommittee was aware that Miles actually acted with any improper motive. Further, even assuming the Board Subcommittee knew Miles acted with a retaliatory motive, there is no evidence that the Board

17

Subcommittee approved of this retaliatory motive. Liebbe admitted that he did not have any evidence that the Board Subcommittee members voted to deny his grievance because of his protected speech. Pl.'s App. 325-329. Further, Dallas ISD presented the testimony of two Board Subcommittee members, Nancy Bingham and Dr. Lew Blackburn, that Liebbe's speech had no role in their votes to deny his grievance, and that their decision was based on investigative findings concerning Liebbe's job-related misconduct. *See* Def.'s App. 105-09, 112-14. Liebbe does not controvert this evidence, and he presents no other evidence that the Board Subcommittee members' stated reasons for their decision are pretextual. The Board Subcommittee's uncontroverted "independent reason[s]" for denying Liebbe's grievance shield the District from § 1983 liability. *See Beattie*, 254 F.3d at 604. Because Liebbe fails to raise a material fact issue that his speech motivated the Board Subcommittee's decision to deny his grievance and does not controvert the independent reasons proffered by the Board Subcommittee members, he cannot maintain a § 1983 First Amendment retaliation claim against Dallas ISD.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Dallas ISD's Motion for Summary Judgment and dismisses Liebbe's claims against Dallas ISD.

**SO ORDERED.**

SIGNED September 26, 2018.

_____
**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**